IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION



FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAR 21 2012

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

| | |
|---|---|
| UNITIED STATES OF AMERICA<br>Ex Rel. JAMES HUGH POTTS, II,<br><br>Plaintiff,<br><br>VS.<br><br>UNITED HEALTH SERVICES, INC., UHS OF PEACHFORD, L.P., Matthew W. Crouch, and Tommie Richardson, MD<br><br>Defendants. | 1:12-CV-0963<br><br>CIVIL ACTION NO. _____<br>-RLV<br><br>Original Complaint Filed<br>IN CAMERA;<br>Sealed pursuant to<br>31 U.S.C. §3730(b)(2) |

**PLAINTIFF'S ORIGINAL COMPLAINT**
**(filed under seal)**

### I. INTRODUCTION

1. This is a Civil Action by *qui tam* Relator James Hugh Potts II (hereafter referred to as "**Plaintiff**"), in the name of the United States of America, to recover penalties and damages arising from the healthcare quality fraud and false claims of United Health Services, Inc., UHS of Peachford, L.P., Matthew W. Crouch, and Tommie Richardson, MD (hereafter "**Defendants**") in providing medical services to patients whose services were paid for by the United States of America or through plans secured to the citizens of the United States under Federal law.

1

## II. **PARTIES**

2. Relator. James Hugh Potts II is a citizen and resident of Georgia. Mr. Potts resides at 1348 Ponce de Leon Ave. NE, Atlanta, Georgia 30306.

3. Defendants. Tommie Richardson, the Clinical Director, Matthew W. Crouch, CEO of UHS of Peachford, L.P., UHS of Peachford, L.P. (d/b/a Peachford Behavioral Health System of Atlanta located at 2151 Peachford Rd., Atlanta, Georgia 30338-6534), which is a limited partnership subsidiary of United Health Services, Inc., a Delaware Corporation with its principal executive offices at Universal Corporate Center, 367 South Gulph Road, P.O. Box 61558, King of Prussia, PA 19406. UHS of Peachford L.P. can be served through its agent for service of process, Matthew W. Crouch, CEO. United Health Services, Inc. and UHS of Peachford, L.P. can be served through their agent for service of process, Steve G. Filton, Senior VP and CFO. Dr. Tommie Richardson can be served at 4015 South Cobb Dr., Suite #115, Atlanta, Georgia 30080.

## III. **JURISDICTION AND VENUE**

4. **Personal Jurisdiction**. This Court can exercise jurisdiction over Georgia residents Dr. Tommie Richardson and Matthew W. Crouch, as well as UHS of Peachford, L.P. and its parent United Health Services, Inc.

2

UHS of Peachford, L.P.'s principal place of business is in Georgia and the specific acts complained of took place, in whole or in part, in Georgia.

5. **Subject Matter Jurisdiction**. This Court can exercise subject matter jurisdiction over this matter because the events complained of occurred, in whole or in part, within this district and division conferring subject matter jurisdiction under 31 U.S.C. §3732(a) and 28 U.S.C. § 1331. Specifically, the claim of the United States, through Mr. Potts, against the Defendants for filing false and/or fraudulent claims with the United States arises under 31 U.S.C. § 3729 *et seq*. Thus, the claim at issue presents a federal question.

6. **Supplemental Jurisdiction**. This Court can exercise supplemental jurisdiction over the Georgia State False Medicaid Claims Act under 28 U.S.C.S. § 1367(a). Specifically, the claims of the United States, through Mr. Potts, against the Defendants for filing false and/or fraudulent claims with the United States are so related to the claims against the Defendants for filing false and/or fraudulent claims with the the State of Georgia, that they form part of the same case or controversy under Article III of the United States Constitution.

7. **Venue**. Venue is appropriate in this district and

division as Medicaid and Medicare reimbursement claims for Georgia hospitals occurs in this district and division.

## IV. **FACTS**

### Background Facts about Relator Mr. Potts

8.      Mr. Potts is a trial lawyer and owns James Hugh Potts II, L.L.C. in Atlanta, Georgia.

9.      Mr. Potts represents April Wood, the surviving daughter and administratrix of the estate of Sherlie Wood, in a wrongful death action.

10.     Mr. Potts uncovered healthcare fraud unrelated to the negligence and wrongful death action involving UHS of Peachford, L.P. based on Defendant's noncompliance with a Department of Health and Human Services ("HHS": Health Care Financing Administration ("HCFA"), renamed the Centers for Medicare and Medicaid Services ("CMS")) agreement of participation.

### HHS Action and Defendants' Non-Compliance:

11.     On the morning of 21 July 2000 a 48 year-old detoxification patient on the Stabilization Unit at UHS Peachford, L.P. was found deceased and the Georgia Department of Human Resources ("DHRS") concluded, a "current problem with physician order patient reassessments per detoxification protocol." (Exhibit 1).

4

12.     On 14 May 2001 the United States Department of Health and Human Services ("HHS") acting in the public interest to ensure minimum standards of hospital safety for Medicare services notifies Peachford Hospital's CEO, Matt Crouch, regarding 2 surveys in both March and April 2001. The letter reads in pertinent part as follows: **"the conditions at your hospital pose an immediate and serious threat to the health and safety of patients."** (Exhibits 2 and 2a).

13.     HHS further states that Medicare will no longer pay Peachford for patients admitted after 6 June 2001 unless the deficiencies are corrected. (Exhibit 2).

14.     The following month on 20 June 2001, the Georgia Department of Human Resources **(DHR)** also notifies Peachford Hospital regarding its own hospital survey in June 2001 stating, "There were deficiencies noted during the survey and these will require your attention." Included in the deficiencies, **"Nursing Services failed to ensure appropriate evaluation, planning, monitoring and supervision of patient care."** (Exhibits 3 and 3a).

15.     Matthew Crouch, Peachford's CEO, in a specifically tailored plan of corrective action agrees to complete regular physical assessments encapsulated in a "Narcotic Withdrawal Scale" to ensure a minimum level of

appropriate monitoring of all "Addiction Services" inpatients so that Peachford can meet the minimum standards of safety and keep its Medicare funding and hospital permit. (Exhibits 4 and 5).

### Defendants Kill Sherlie Wood

16. The next year, on 28 July 2002, a Medicare patient named Sherlie Wood, presents to UHS Peachford hospital ("Peachford") with pain management issues from a failed total knee replacement. (Exhibit 6)

17. Without being examined by a physician she is admitted by a social worker to the inpatient "Addiction Service" under the clinical direction of Dr. Tommie Richardson. The social worker diagnoses Sherlie Wood with mild prescription morphine withdrawal. (Exhibit 6).

18. The on call physician, relying on the social worker's assessment, places Sherlie Wood on the automatic medication and monitoring protocol of the inpatient "Addiction Service," which includes regular dosing of methadone and other powerful drugs but also incorporates the regular and careful staff assessments encapsulated in the Narcotic Withdrawal Scale that Peachford was mandated to do and that CEO Crouch had promised to do. (Exhibits 7, 8, and 9).

19. Three days later, on 31 July 2002, Sherlie Wood is found dead in her hospital bed, killed by the relentless stacked administration of several sedating and cardio-toxic drugs without a single post medication Narcotic Withdrawal Scale assessment ever having been completed. (Exhibit 10).

20. Her autopsy revealed that Sherlie Wood died from an overdose of narcotic medications, "Combined Toxic Effects of Methadone and Hydroxychoroquine", including multiple stacked methadone doses, prescribed by her physician and administered to her by UHS of Peachford, L.P. ("Peachford") hospital personnel. (Exhibit 10).

21. The narcotics were prescribed according to an automatic protocol by a Peachford Hospital staff physician despite Sherlie Wood never undergoing a physical examination by a physician. (Exhibits 6, 7, 8 and 9).

22. In an **explicit violation** of the terms of Defendants' 'probation', the drugs were administered to her by Peachford hospital personnel who failed to monitor the patient's response by not completing any of the required regular Narcotic Withdrawal Scales though they had been federally mandated for this hospital through its arrangement with Medicare. (Exhibits 2, 3, 4 and 5).

23. Over-sedation with narcotics is a non-lethal condition when properly monitored that occurs daily and

ubiquitously in medical care (e.g. anesthesia where with proper monitoring the effects are easily reversible).

24. Sherlie Wood was killed from negligent monitoring after, as HHS concluded, " . . . the conditions at [Peachford] hospital pose an immediate and serious threat to the health and safety of patients, and after DHR worked out a corrective plan to save Peachford's Medicare funding." Matt Crouch, CEO, not only acknowledged the issues were valid but said they were resolved well before Sherlie Wood was killed and Dr. Tommy Richardson's clinical role in this monitoring was a matter of law (DHR Reg. 290-9-7.3701-3705). (Exhibits 1 through 5).

25. Sherlie Wood's protocol driven Admission Orders required Peachford nurses to administer a "Narcotic Withdrawal Scale (NWS) upon admission, Q.I.D., and 1 hour after each dose of Clonodine." (Exhibits 5 through 9).

26. In at least 26 opportunities, not once was the Narcotic Withdrawal Scale ever completed for Sherlie Wood; she became dangerously over-sedated, and died.

27. Years after Sherlie Wood's death for Defendants' failure to monitor her, the State of Georgia, Office of Regulatory Services reported deficiencies in its survey completed 12 July 2004; specifically, multiple counts of failure to document the Narcotic Withdrawal Scale, where

8

one Registered Nurse "revealed that **she did not routinely fill out the NWSs**." (Exhibit 11, pp. 8-11).

28.  United Health Services, Inc. ("UHS") derived 22% of its $24 Billion gross revenues from Medicare and 15% from Medicaid in 2011.  UHS Behavioral Health Care Facilities (of which UHS of Peachford, L.P. is included) derived 17% of its gross revenues from Medicare and 24% from Medicaid in 2011. (Exhibit 12).

29.  At the time of the **12 July 2004** survey, "Peachford Behavioral Health System of Atlanta was not in compliance with Chapter 290-9-7, Rules and Regulations for Hospitals, as the result of complaint investigation #GA00016859." Findings were "**failure of the quality management program to adequately identify and address the causes of systems failures related to a patient death**." (Exhibit 11, p. 1).

30.  The findings of the 12 July 2004 survey also include Defendants' "**failure to provide sufficient nursing staff to assess and address the needs of psychiatric and substance abuse patients and to ensure the maintenance of a safe and therapeutic environment**." (Crouch Plaintiff's Exhibit 11, p. 2).

9

## V. **CAUSES OF ACTION**

### 1. Violation of the False Claims Act

31.  Mr. Potts incorporates all previous allegations as if fully set forth again here.

32.  As described above, Defendants, by and through their officers, agents and employees, knowingly presented or caused to be presented to an officer or employee of the United States, specifically the Department of Health and Human Services ("HHS"), a false or fraudulent claim for payment or approval.

33.  In addition, or alternatively, Defendants, by and through their officers, agents and employees, knowingly made, used or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the United States, specifically HHS.

34.  In addition, or alternatively, Defendants, by and through their officers, agents and employees, had possession, custody, or control of property used, or to be used, by the United States and, intending to defraud the United States or willfully to conceal the property, delivered or caused to be delivered less property than the amount for which the Defendant received a certificate or receipt.

35.     The United States of America has been damaged as a result of Defendants' violations of the False Claims Act.

36.     Each of the actions described in Paragraphs 30 through 33 is a violation of the False Claims Act, 31 U.S.C. § 3729, for which the Defendants are liable for damages as mandated by the statute.

### 2. Violation of the Georgia State False Medicaid Claims Act

37.     Mr. Potts incorporates all previous allegations as if fully set forth again here.

38.     Defendants have repeatedly and continuously violated the Georgia State False Medicaid Claims Act (hereinafter "GSFMCA").

39.     As described above, Defendants, by and through their officers, agents and employees, acted knowingly in presenting or causing to be presented to the Georgia Medicaid program a false or fraudulent claim for payment or approval.

40.     As described above, Defendants, by and through their officers, agents and employees, acted knowingly in making, using, or causing to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Georgia Medicaid program.

41.     As described above, Defendants, by and through their officers, agents and employees, acted knowingly in making, using, or causing to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay, repay or transmit money or property to the State of Georgia.

42.     The United States of America has been damaged as a result of the Defendants' violation of the GSFMCA.

43.     Each of the actions described in Paragraphs 38 through 40 is a violation of the GSFMCA § 49-4-168.1(a)(1), (2), and (7), for which Defendants are liable for damages as mandated by the statute.

### 3. Violation of the Social Security Act for Failure to Comply With the Corrective Action Plan

44.     Mr. Potts incorporates all previous allegations as if fully set forth again here.

45.     As described above, Defendants, by and through their officers, agents and employees, failed to meet professionally recognized standards of health care.

46.     As described above, Defendants, by and through their officers, agents and employees, failed to substantially comply with the HHS corrective actions plan, including but not limited to completing Narcotics Withdrawal Scales.

47.     Each of the actions described in Paragraphs 44 and 45 is a violation of the Social Security Act and HIPAA, 42 U.S.C. § 1320a-7(b)(6)(B), (13), for which Defendants are liable for damages as mandated by the statute.

### 4. Violation of the Health Insurance Portability and Accountability Act ("HIPAA")

48.     Mr. Potts incorporates all previous allegations as if fully set forth again here.

49.     As described above, Defendants, by and through their officers, agents and employees, knowingly and willfully executes, or attempts to execute, a scheme or artifice to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services.

50.     Each of the actions described in Paragraph 48 is a violation of HIPAA § 1347(2), for which Defendants are liable for damages as mandated by the statute.

### VI. PRAYER FOR RELIEF

51.     Mr. Potts respectfully prays that Defendants be cited to appear and answer herein and that upon a final

hearing of the cause, that judgment be entered for the United States and Mr. Potts against Defendants as follows:

A. As to violation of the False Claims Act, the following:

i. Judgment against Defendants, in an amount equal to three times the amount of damages the United States of America has sustained because of Defendants' actions, plus a civil penalty of $10,000.00 for each violation of 31 U.S.C. § 3729, the costs of this action, with interest, including the cost to the United States of America for its expenses related to this action;

ii. Relator awarded all costs incurred, including reasonable attorneys' fees;

iii. In the event the United States of America proceeds with this action, that the Relator be awarded an amount for bringing this action of at least 15%, but not more than 25% of the proceeds of the action or settlement of the claim;

iv. In the event the United States of America does not proceed with this action, that the Relator be awarded the amount the Court determines is reasonable for collecting the civil penalty and damages, which

shall not be less than 25% nor more than 30% of the proceeds of the action or settlement;

v.   Relator awarded prejudgment interest;

vi.   United States of America and Relator receive all relief, both at law and equity, to which they may reasonably appear entitled.

B. As to violations of the Georgia State False Medicaid Claims Act, the following:

i.   Judgment against the Defendants for the value of any payment provided under the Medicaid program, directly or indirectly, as a result of the unlawful acts.

ii.   Interest on the value of the payment or benefit described above at the prejudgment rate in effect on the day the payment or benefit was received or paid, for the period from the date restitution is paid.

iii.   A penalty not less than $5,500.00 or more than $11,000.00 for each false or fraudulent claim, plus three times the amount of damages which the Georgia Medicaid program sustains because of the act of such person.

iv.   Plaintiff and Relator invoke in the broadest sense all relief possible at law or in equity under § 49-4-168, whether specified in this pleading or not.

>   Plaintiff will seek an amount as civil penalties that will be justified and appropriate under the facts relevant to this issue and under the laws as determined by this court.
>
> C. As to violations of the Social Security Act, the following:

   i. Defendants, individuals and entities, be excluded from participation in any Federal health care program as defined in § 1320a-7b(f).

> D. As to violations of HIPAA, the following;

   i. Defendants, individuals and entities, be imprisoned for not more than 10 years, a $250,000 fine, or both, for each scheme not resulting in bodily injury;

   ii. Defendants, individuals and entities, be imprisoned for not more than 20 years, for each scheme resulting in bodily injury; and

   iii. Defendants, individuals and entities, be imprisoned where a life sentence may be imposed for each instance of patient death resulting from Defendants' scheme to defraud.

   44.   Relator further requests all other relief to which Plaintiff United States of America and Relator James Hugh Potts II are justly entitled, whether in law or in equity.

45.    Plaintiff and Relator demand trial by jury.

This 21th day of March, 2012.

_____
James Hugh Potts II
Attorney for Plaintiff
Georgia Bar No. 58567


JAMES HUGH POTTS II, LLC
1348 Ponce de Leon Avenue NE
Atlanta, Georgia 30306
404-812-0000
www.jhpii.com